May it please the court. My name is James Burnham and I'm here on behalf of William Rouser. I'm going to do my best to save two minutes for rebuttal, but I know that's my responsibility. This court should reverse the district court and reinstate the consent decree because the prison failed to carry its burden of showing substantial compliance. This is clear both from the gaps in the evidence the prison submitted in support of its motion and from the contrary evidence that Mr. Rouser submitted in the form of sworn declarations. First, the prison's evidence. That evidence was deficient in numerous respects. Number one, it failed to say anything about whether the prison had been complying with the expedited grievance process the consent decree specifies for when Mr. Rouser has an issue that he needs to complain about to the prison. That's a fundamental part of the decree and the evidence they submitted does not address it. Number two, it doesn't say anything, the evidence they submitted doesn't say anything about weekly services at the prison, the reasons why they canceled some and whether they rescheduled others. Number three, the statements in the two page declaration the prison submitted in support of its motion to dissolve the decree are entirely conclusory and provide no detail about how the prison has complied with the decree and the specifics in which the prison has done so. And finally, Exhibit A to that two page declaration which is a prison policy. And all of these things were pointed out to the district court? Your Honor, I think Mr. Rouser didn't... No, no, I don't know what you... I don't want to know what you think. I ask you about the facts in the record. Were these, all of these matters pointed out to the district court? They either were or they were not. Yes, Judge Kaczynski, they were. Okay. In the opposition to the summary judgment motion? It's a sort of summary judgment, right? It is like summary judgment, yes, Your Honor. And in the opposition to the summary judgment motion, which is what we can refer to it as here, which is at ER 52, Mr. Rouser pointed out many of these deficiencies. He pointed out that he was being prevented from ordering certain items, that his access to candles was limited during his celebrations. He also made a general statement that the prison's declaration was lies and perjury, which I think generally contravenes what the prison said. Now, one point that I think is important to note at the outset, and perhaps wasn't stressed enough in our briefing, is he filed... Mr. Rouser filed a number of sworn pleadings in this time period during the litigation over dissolution of the decree. And the district judge issued an order saying he wouldn't consider some of them because they didn't plead that Mr. Rouser had complied with the expedited grievance process. The problem is Mr. Rouser didn't receive any orders at all from the district court after March of 2012 when his former counsel left the case. The district court had been sending its orders to a lawyer who represented Mr. Rouser in 2006, who had formally withdrawn, and that's reflected on the docket, in the old docket number, which is case 93- I know what you're getting at, but how can we believe that Mr. Rouser did not receive notice of entry of judgment within 21 days of its entry when it's clear that he received notice of the motion to vacate and the consent decree given and that he opposed the motion? So, Your Honor, he was receiving the defendant's filings. The defendants were sending him everything at the prison because he was incarcerated by the defendants. What he wasn't receiving was the district court's orders because the district court sends those out independently and if you look in the ER, in the excerpts of record, there's actually envelopes throughout where those were all getting returned to sender at the clerk's office of the district court. So how is he prejudiced by any of this? Well, he's prejudiced, Your Honor, because the district judge refused to consider a lot of the evidence he had filed on the ground that he didn't file it again in compliance with the expedited grievance procedure. But he didn't know that that was why the district court was not reviewing his evidence and indeed he thought the district court was reviewing his evidence. And so had he received that order, he could have filed a corrective pleading that complied with what the district court had instructed him to do. Well, now, it is a little like summary judgment, but it's more than that because it would be like a bench trial. And so the district court said that everything that it had before it, that he assumed it to be true, but he resolved some things in a credibility sense against your client, right? Your Honor, I'm not sure because he didn't say whether he was resolving things as a credibility matter. He did say that he was taking my client's sworn pleadings as true. As true. But that couldn't be true. He couldn't have because one of my client's sworn statements was that the prison's declaration was entirely false. So had he taken Mr. Rausser's sworn statement as true, it's logically incompatible with the prison achieving the relief that it sought. Well, it seems to me in looking at the things that your client was claiming, maybe the strongest argument of abuse of discretion, because it's my understanding it's abuse of discretion, but the government has the burden by the preponderance of the evidence, which isn't a very high standard to show that there's been substantial compliance, right? Yes, Your Honor. Okay. The one that would maybe trouble me the most would be that Mr. Rausser's allegation that prison officials placed him in Ad Seg in order to stop him from practicing WICA. But I'm just not sure we should even consider that allegation because it wasn't timely made and is inconsistent with his previous allegations blaming other inmates rather than the prison officials for the segregation. Respectfully, Your Honor, I believe it was timely made because he does make that allegation, and this is at ER 53, in his opposition to the prison's motion to vacate the consent decree. So that allegation was before the district court. Was it as elegantly presented as it could have been had he had… We're on 53. Let me… So, Your Honor, I think the gist of this whole… What he's saying here, so it starts at furthermore, which is on line three, and he goes through this explanation of how the prison has conspired with… or how the prison has trumped up this enemy concern, Damien, to put him in Ad Seg. And I think what he's getting at here, and this is probably… He's saying that this person was not his enemy, and the point he's trying to make here is that the prison is retaliating against him for his… But what day was that? Your Honor, this was filed on February 10, 2013, and it's styled his opposition to defendant's motion to vacate order. But that's after the whole thing's gone on, right? I think the order to… I mean, because earlier in the proceedings when he's… He claimed that it was the inmate that was lying. And so it's right… It's sort of his Hail Mary after he's lost or losing when he comes up with… Well, but… And furthermore, it's… Now I'm going to say it's the prison officials that… Certainly, Judge Callahan. So two points, I think, in response to that. First, Mr. Rausser didn't know that he was losing because he had no idea what the district court had ordered. So he didn't receive the order finding some violations and no violations of the decree. He didn't receive the order saying, I'm not going to look at a lot of your evidence because you didn't file it in a way that is, in my view, compliant with the decree. And moreover, I think that what he was saying the other inmate was lying, I think what Mr. Rausser was trying to say is that the prison was sort of generally retaliating against him for his enforcement of the decree. The other allegation that he makes, and this is at ER 142 and 161, was that when he was placed in Ad Seg, they didn't let him have a copy of his Bible, the witch's Bible complete. And I think that, on its own, would be enough basis to deny enforcement… I'm sorry, to deny dissolution of the decree because that is a fundamental provision in the decree. And it's something that's afforded to Christian inmates and to Muslim inmates and to all other religious inmates. The one other point… So, I see, that one was filed in October 2012. Yes, Your Honor. And why did he file that if he wasn't getting the orders? This was in opposition to something the prison filed? So, Mr. Rausser was giving the defendants filings. So, he knew things were happening at the district court. And so, I think in just an abundance of caution, of a sort of zealous advocacy, he starts firing off these different filings. And he saw, for example, that at one point the defense requested an extension of time, and so he files an opposition to extending the time. And so, there's sort of this avalanche of filings from Mr. Rausser to the district court that I think… So, on October 15th, the document at ER 141, where does he talk about the Bible, the Wiccan Bible? I believe it's on 142. Is Mr. Rausser a lifer? What's his status in prison? Judge Callahan, I actually don't know that. Okay, I didn't see it in the record. He's been there for a long time. He's been there since the 70s. And so, I think he is. Sorry, Judge Kaczynski. So, when he indicates that he's been having trouble with the prison since 79, he's been there continuously? And he's not in and out? No, Judge Singleton. I believe he's been there continuously. And for the bulk of that time, at least while this litigation's been happening, he was in the Eastern District of California. Judge Kaczynski, if you'll permit me, I'd like to reserve my time, and then when I come back, I can tell you exactly where that allegation is. That's fine. Can I ask one question before he sits down? Sure, of course. My time, not his. Do you agree that the fundamental thing that this panel has to address and answer is, what was the state's burden of establishing a prima facie case in order to trigger the dissolution of the consent decree? That one. And second, did they make that prima facie case? And then third, did that shift the burden of going forward to Mr. Rausser to challenge it in order to justify an evidentiary hearing at some later point? Do you agree that that's kind of the makeup? With one exception, Judge Singleton. Sure. I would say that the burden never shifts to Mr. Rausser. I think the way I would think about it is- Well, the burden of going forward with the evidence does, not the ultimate burden of persuasion. I agree with you, I think, Judge Singleton. Mr. Rausser needs to file enough evidence. If the prison has made a prima facie case, then Mr. Rausser needs to file enough evidence to show that there's enough disputed facts that an evidentiary hearing is warranted, applying the standard that Your Honor just articulated. All right. Now, in that regard, the trial judge who was a judge in the Central District and was not part of the process that led to the preliminary injunction that in fact triggered the consent decree, the trial judge in the Central District seemed to view the prima facie case as establishing certain discrete tasks that the state had to substantially perform in order to justify early termination of the consent decree. And so there's a list, A, B, C, and D. Do you agree that that's true? That that's the prima facie case? No, Your Honor. And I think if you look at this court's recent decision, well, sort of recent decision, in Jeff D versus Otter, the court makes clear that that's really not how you're supposed to do this analysis. You're supposed to look at the general purpose of the decree and the sort of overall goals and look at the defendant's record of compliance, whether they've demonstrated a good faith commitment to the decree's goals. And I think that is very different from the sort of box checking analysis that the district court here appears to have performed. Thank you, Your Honor. Okay, we'll hear from opposing counsel. Good morning, Your Honors. Good morning. May it please the court, my name is Manish Sharma, appearing on behalf of defendants in this matter. If I could start actually with Judge Singleton's question, I would, defendants would submit that the district court in this case did not engage in a type of box checking analysis, but in fact looked at the four corners of the consent decree and evaluated whether defendants had carried their burden, which it was their burden, to show by a preponderance of the evidence that they had substantially complied. It's only a two-page decision, it could have probably, it would have been nice if it was a little longer. I do agree that it would have been nice, Your Honor, however I think the question Why shouldn't we send it back to have the district judge make it longer? Because the standard that this court should apply in viewing the district court's decision is for an abuse of discretion. And the two questions But why is it an abuse of discretion to not actually discuss all of the items that constitute substantial compliance? This, for example, there are certain rights that the petitioner here has under the consent decree. Did the state make a showing on each of those points? Did the state, for example, provide evidence that he had the right to possess certain religious items in his cell, including the Wiccan Bible? Your Honor, there was No, yes or no? You can then explain anything you want to, but you start with a yes or no. Your Honor, to your specific No, no, yes, yes or no? No, Your Honor. Okay, good. So next, was there a showing by the state that there were access to items for group worship, including candles, candle holders, and incense? Yes, there was, Your Honor. Okay. How about, was there a showing by the state on group worship? Yes, there was, Your Honor. And what does that consist of? What that consisted of was both the declaration of Nathan Wilcox, who testified that the outdoor religious area where group services were held was constructed, and that there are two types of group religious services at issue. There's the Sabbats, which I understand to be our annual, and I believe there's eight of them throughout the year, annual, larger, I don't know if larger is the correct term, but delegated dates of services, and that two Sabbats had been held at the outdoor religious area. In the one year? In the time since it had been constructed. I believe the Sabbats were also held, but not at the outdoor religious area, because the outdoor religious area was constructed, I believe, in October 2012, or it was completed in October 2012. There was also, to the second type of group services, which I believe are SBATs, which are weekly group religious services, Mr. Wilcox did declare that those weekly services were being held, and provided a copy of policies and procedures, which explained how... In the time that Mr. Rausser attended? Yes, Your Honor. Okay, how about the ability to attend religious gatherings, the Sabbats, did he talk about those? Yes, he did, Your Honor. How about the outdoor space being available for religious activities? He did talk about that, and he even explained that Mr. Rausser had been allowed to participate, even in the design phase of creating that religious space, to make sure it complied with Mr. Rausser's WICN needs. So, and the appeals process, you say, was in place, right? The appeals process was in place, it was not specifically addressed in Mr. Wilcox's declaration or in Defendant's motion to vacate... Well, how do we know it was in place? I don't want your personal opinion. When I ask questions about stuff, I ask for evidence on the record. Your Honor, again, the settlement agreement, the four corners of the settlement agreement describe how the appeals process... Could you tell me how we, sitting here now, know that there is an expedited appeal process in place? If I wanted to look at this pile of documents that come from distant court, where would you point me to as documenting that? I would not be able to... Okay, so you have now conceded that there are two items on that list as to which the State has provided no evidence. Okay? Why isn't that, per se, a reason to reverse the district court? I mean, without any further... This is not a situation where they have complied and maybe once in a while they've failed to implement on one instance or another. There's no evidence. And given that there is no evidence on two key items of the consent decree, why are you not conceding error? Because, in this case, Your Honor, the standard that the district court was applying, which was the standard that the parties agreed to in the settlement agreement, which was the subject of the consent decree, was substantial compliance. Well, how can there be substantial compliance when there's no evidence of compliance at all as to some of the items? Again, Your Honor... You think substantial compliance means we comply with three-quarters of the items or half the items and that's substantial? No, I do not. Why isn't the district court simply wrong on that? What it says is you have to comply with every item and maybe once in a while one of the items doesn't get, you know, you have a slip. Why isn't that the correct interpretation of what substantial compliance means? Again, in this case, Your Honor, I think... I mean, let's say this were a Christian prisoner and let's say that, well, Catholic, let's say, and say, well, you get everything but there's no evidence that you have access to a priest for purposes of confession. I think that's an important thing for Catholics, right? So, or mass, you can, you know, and there's no evidence as to that. Would you say that's substantial compliance? Could anybody, could any rational person say that that's substantial compliance even though you have no access to a priest? Yes or no? I would personally would say no. I'm not familiar, I think, with... Well, all right. Accepting that is true, yes, Your Honor. Well, as a Catholic, I can say we sin a lot so we need to go to confession. What I would point out, Your Honor, is that the way the settlement agreement was passed... So how is this different? I don't understand. If these things are in the consent decree and the burden of the state, of the prison, is to show substantial compliance, why do they not have to provide evidence that in most cases each of those items on the list has been complied with? And the question of substantiality then goes to whether or not it's often enough or too many exceptions and so on. Again, the rights that are listed in the consent decree, including, for example, the possession of a Wiccan Bible and the expedited appeals process, are often listed in the negative, so that Mr. Rausser has the right to have a Wiccan Bible but the prison is not obligated to provide him with a Wiccan Bible. But you have the burden to show substantial compliance in order to get out from under, okay? That's correct, Your Honor. And you can make an affirmative showing that he has not, for example, been prevented from having a Wiccan Bible. You could have a ward and you can make that showing. It's not impossible, right? That's correct, Your Honor. Or you could even make a showing by somebody who guards him and say, I know he has a Wiccan Bible. We've seen it. We search the cell regularly and there is a Wiccan Bible. You could make that kind of showing. But can you make a showing of substantial compliance when you have absolutely zero evidence as to specific items in the consent decree? I think you can, Your Honor, again, because in this case what Mr. Wilcox testified to in his declaration was that after looking at the settlement agreement that Mr. Rausser has been permitted to access all of the items listed in the Bible, he did not specifically identify the Wiccan Bible as one of the items, but he did identify— I'm sorry, one of the items identified in the Bible? Sorry, excuse me, Your Honor. What Mr. Wilcox testified to in his declaration is that Mr. Rausser has been permitted to access all the personal religious items that are listed in the consent decree. But access is a different point. This is why I went over the points with you. Access is different from having possession in the cell of a Bible, right? Are we disagreed on that? I do not disagree, Your Honor. Okay, so how can there be substantial compliance if there's no evidence that one separate point in the consent decree has been complied with? Again, sorry, Your Honor, because the prison is not obligated to provide Mr. Rausser, for example, with a Wiccan Bible, when Mr. Wilcox testified that he had access— Well, please don't play word games with me. He can certainly say we have not prevented him from having one. Right. There's nothing that prevents the warden from saying that. And I do think that that is what the declaration is saying. Okay, show me. Show me. Page number. And you might say the same as to the appeals process, too. Yes, Your Honor. Okay. Now, while you're looking, why don't you think about the next one.  Sorry, Your Honor? What if this is a case of willful noncompliance with any of the points? Can you have substantial compliance when there is—if, in fact, it turns out that he was being punished by being denied some of these things, rather than sort of accidentally things slip through the cracks? Sure, Your Honor. To take that in a step, I— No, no. Sorry. Willful noncompliance. If you have a showing of willful noncompliance, can you still have substantial compliance with a consent decree? I don't believe so, Your Honor. Okay. Now, he does, in fact, allege willful noncompliance. He does, in fact, allege that. I don't think that's true, actually, Your Honor, if we are talking about the situation with regard to— Well, let Mr. Burnham speak to that when he gets a chance to talk, but I think you'll find that he will claim that there is. So this is your chance to anticipate what he's going to say and refute it. Yes, Your Honor. If anticipating that the allegation of willful noncompliance will relate, as Judge Callahan pointed to earlier, the allegations that he was placed in ADSEG— See, you don't have to play these games with me, right? You know what I'm talking about. So let's say, in fact, that he has made that claim, and there is an evidentiary hearing, and the district court finds, yes, he was, in fact, placed in ADSEG precisely in order to punish him for exercising the rights under the decree and to prevent him from exercising his religious rights. Let's say there was such a finding. Could there still be substantial compliance with the decree? I don't believe so, Your Honor. So why haven't you just confessed the error? Why haven't you just not—if he has a claim of willful noncompliance, and it has not been resolved, and it could be resolved in his favor, why doesn't he have to go back for an evidentiary hearing on that? Because, Your Honor, I don't think it has been resolved in his favor, and I don't think that he presented that claim to the district court. No, no, I didn't say that—I'm sorry. I didn't say it was. I'm saying it could be. So you don't think, in fact, he has raised willful noncompliance? I don't believe so, Your Honor. I don't think, looking at the record that was before the district court on the motion to vacate, that— Okay, so that's all you have to say in opposition to what Mr. Burnham will tell us? I guess so that I can better understand what you're— are you saying that because it was raised for the first time in the motion to vacate and he never raised it previously that that's too late? No, Your Honor. I think, turning to, I think, some of the questions that the court had for Mr. Burnham into asking where Mr. Rausser would have raised this allegation that he was placed into ADSEG as retaliation, in his opposition, what he alleges in terms of the enemy concerns, it's not that he was placed into administrative segregation, but that he was going to be transferred as a result of the enemy concerns. There's also evidence on the record, and again, applying the clear error standard that allows this court to examine the record to see the basis of the district court's decisions. There's evidence on the record— I'm sorry, there's a clear error standard on summary judgment? For a motion to vacate, or for the motion that's in this case, the court evaluates the district court's decision for an abuse of discretion. For legal issues, I believe it's a de novo standard for factual determinations. It's a clear error, whether there was a clear error in any factual determination. Well, that's the question I was asking. Does that apply on summary judgment? There's no findings of fact on summary judgment. These are either disputed facts or undisputed facts. So where does clear error come in? He either filed something that puts it in dispute, or he has not filed something that puts it in dispute, right? Yeah, Your Honor, to clarify, this was not a motion for summary judgment. It was a motion to vacate a consent decree. The standard for the motion to vacating a consent decree is different, slightly different, than the motion. It's not just about a dispute of material fact. It's actually about whether, if there's a factual finding in one party's favor, whether there was clear error in that factual finding. So if there's a dispute, the court can just resolve it on the papers? He says, I was, let me just say, segregation, they say no, the court can just resolve it on the papers? Turning to the issue of the evidentiary hearing, I think, again, just to… No, I'm just asking a question. I don't know that an evidentiary hearing would be mandatory. I mean, can the district court make factual findings when there was a dispute on the paper record, just on the papers? I believe so, Your Honor, yes. And what authority do you cite for that? I believe in Gilmore, what is mandated under the consent decree and the provisions of the PLRA is that the court must take evidence. There is not an explicit discussion of whether that evidence must be through an evidentiary hearing or… And the court took evidence here, right? With the declarations and all of that. It did, and I do want to emphasize, Your Honor, that in this case, there was no dispute because the court, in fact, accepted all of Mr. Rausser's allegations as true. Wherever there was a dispute, it was ruled to be found in Mr. Rausser's favor. So if he claims that he was put in administrative segregation to prevent him from exercising his religious rights, the district court took that as true? That's correct, but he did not claim so. Okay, and you think that's what Mr. Burnham will concede when he gets up? I don't believe he will concede so, but I believe when we're looking at the record, if we turn to the page that Mr. Burnham cited… Why don't you turn to it now and you can tell me, because you're not going to get another chance to talk. Certainly, Your Honor. You're still also, don't forget, you were looking also for the place where… Mr. Wilcox's declaration, yes, Your Honor. You can take both of those in order, whichever you want to do first. Thank you, Your Honor. So turning the court's attention to excerpt of record 53, as Mr. Burnham explained, furthermore… Which, this is Rausser's… I have it, yes. Line 53, which line? From lines 3 to 5. Okay. Furthermore, defendants are in the process of getting ready to transfer a plaintiff due to an enemy. There's no allegation throughout the remainder of this opposition that he was being placed into administrative segregation because of alleged retaliation, or, as the court has explained, I would also point the court's attention to the terms of the settlement agreement, which explicitly… Well, keep reading that paragraph. Do you have it in front of you? I do, Your Honor. You see where at the very end of the sentence it says an attempt to shut down Wiccan Prayer, to create false documents to attempt to shut down Wiccan Prayer? That's correct, Your Honor, but as Judge Callahan pointed out earlier, this is an allegation that the inmate… I would like to know what your answer is. I do see that statement, and my answer is that the allegation here is that another inmate was creating this false allegation to shut down the Wiccan Program, that he's a Protestant inmate and he has an issue with Mr. Rausser. Okay, so let's read the sentence together. The Protestant inmate member and program clerk… Program clerk? Is that an inmate? Yes, that is correct, Your Honor. Who used his computer… Inmates have computers? The inmate clerks can access… To create false documents to attempt to shut down Wiccan Program. Yes, Your Honor, so the inmate clerks can have access to computers in a limited fashion to conduct their job duties. You tell me that that is the case. I mean, the program clerk. To me, the program clerk sounds to me like somebody who's a prison official. Your Honor, I actually would turn again to the settlement agreement where it describes the inmate clerk positions. In fact, Mr. Rausser had the ability under the settlement agreement to apply to serve as an inmate program clerk for religious services, but the agreement was that Mr. Rausser could apply if a position was available. He would be considered, as would any other inmate. He would not be given special treatment, but that he would be allowed to apply and be fairly considered. At the time… So this is an inmate that performs administrative functions? That's correct, Your Honor. Why isn't he, when performing an administrative function, why isn't he a prison official at that point? As an inmate? Mm-hmm. I don't think that… Sort of like a trustee, right? A trustee performs…a trustee, I guess I call it, right? Performs…is an inmate, but he also performs administrative functions. Let's say a trustee goes and beats up another prisoner. That might be because of the special access he's given or… Well, Your Honor, we do not have trustees in California's state prison system. No, I'm just giving that as an example. Why isn't the program clerk, when he's acting on the computer and administering the program, why isn't he acting as a prison official? I know of no case law that would argue otherwise. I know that… Well, explain to me why we shouldn't hold that he's a prison official. Because inmates within the California prison system, it's part of their… This is an allegation that somebody was trying to shut down Wickham Prayer… That's correct. …using computers, presumably owned by the prison, and operated by somebody who is in a position to do some administrative work. Why isn't that an allegation that, in fact, the prison was trying to shut down the program and this whole thing was something trumped up to keep him from exercising his… And, in fact, the prison was, in fact, through the program administrator, taking sides between the Wickhams and the Protestants. Well, going back to the original question, Your Honor, I don't think that… Well, once you answer this question, then you can go back to the original question. I don't think that the evidence here shows that the prison was taking sides. There was an investigation into the allegations of this inmate clerk. To the first question, I don't think that the actions of the individual actions of an inmate clerk, because he has access to a computer, because he made an allegation, I don't think that the allegations were necessarily in his role as an administrator. Well, but your burden is to show substantial compliance by the prison. Okay, so they have this guy there working the computers and using his administrative abilities to interfere with Mr. Rausser's ability to exercise his religious rights. Why isn't that a… just refutes right there the idea that the prison was in substantial compliance? Again, Your Honor, if the mere allegation is that an inmate clerk is trying to interfere with Rausser's Wickham religious rights without an allegation that those rights are actually interfered with, I don't see how that would bar substantial compliance. Well, he's saying, well, they're trying to move me by inventing an enemy in order to shut down Wickham prayer. But anyway, I think we've explored this enough. So why don't you give me the other thing you were going to give me there. Yes, Your Honor. That declaration and where it is that it covers all the points in the consent decree. Again, Your Honor, turning to ER 52, paragraph 4, this is at line 16. Mr. Wilcox explains, with respect to plaintiff's access to… I'm sorry, ER 52? ER 62, Your Honor. Okay, 62. Which line? Paragraph 4, line 16. With respect to plaintiff's access to personal religious items set forth in paragraph 11 of the Joint Settlement Agreement, plaintiff has access to all items set forth in that paragraph and has, in fact, obtained specified items… I remember we're chasing down the ability to have a Bible in the… the right to have a Bible in the cell. That's correct, Your Honor, and I can turn you to the settlement agreement, the paragraph 11. No, no, no. Let's talk about the… I'm sorry? So when Mr. Wilcox refers to paragraph 11 of the settlement agreement, listing the items Mr. Rausser is allowed to access, the Wiccan Bible is one of the items listed in that paragraph 11 of the settlement agreement, Your Honor. Okay, where is the settlement agreement? So, at ER 210. Okay. And this is at line 10, Your Honor. It says defendants shall permit Rausser access to the following approved personal religious items. Well, I understand, but there is another provision that talks about having a Bible in the cell. Isn't there? I believe the provision you're referring to, Your Honor, is the provision that says that if Mr. Rausser is placed in administrative segregation, he will be allowed to take his witch's Bible with him to administrative segregation to the extent other inmates of other faiths are also allowed to take religious texts to them to administrative segregation. Again, though, there's no allegation that was before the district court when it was ruling on this motion to vacate that Mr. Rausser had been placed into administrative segregation or that while he was in administrative segregation that he had, in fact, been denied his Bible. That was not before the court on the motion to vacate. And where does Mr. Wilcox talk about the administrative appeals process? Mr. Wilcox does not address the administrative appeals process, Your Honor. Do you want to say anything about this, Nafu, with the district court returning, getting all those orders returned and not doing anything about it? Your Honor, I agree that I'm baffled as to why there was no steps. From my understanding, what happened is that Mr. Rausser has had a number of attorneys representing him through the course of the litigation. Well, I understand what happened. I'm asking you specifically about the fact that orders get returned as undeliverable and nothing happens. Is that how you run a court system? Your Honor, I don't know that it—I don't agree that that's how you would run a court system. However, I don't think that in this case there's anything— Wasn't Mr. Rausser prejudiced by not getting the court's orders? I don't think he was, Your Honor. I think when you look at the— Would you have been equally happy not to get the court's orders either? I would not have been equally happy to, of course, Your Honor. But again, looking at the record, Mr. Rausser received notice of every motion that— and really it was only the one motion that defendants filed. He had the opportunity to oppose it, which he did. And in his opposition, the only examples of noncompliance or the only claims he had that defendants were not complying with the settlement agreement were that he had not been permitted enough candles for one religious service. He conceded that at least of the two religious services that Mr. Wilcox directly identified, that one of those had taken place. He made no reference or no opposition to Mr. Wilcox's claims that he had been allowed access to his personal religious items and that he had obtained the specified items as tarot cards, rocks, feathers, that was in Mr. Wilcox's declaration. He did not dispute that the outdoor religious area had been constructed and was— So your view is that all those orders that he didn't get didn't prejudice him? That's correct, Your Honor. Okay. Okay, thank you. May I ask a question? Yeah, of course. Getting back to the prima facie case, would you agree that the preliminary injunction that Judge Carlton entered, that the state was in the process of appealing, triggered the mediation that led to the adoption of the consent decree? You would? I would agree that is the process that we got to the consent decree. Okay. In leading up to the issuance of that preliminary injunction, Judge Carlton held a number of hearings, in fact actually took oral testimony on at least one occasion, and came to the conclusion that within the California prison system, of which the Eastern District has more than its share, within the California prison system, there was a pervasive hostility to at least Wicca and perhaps other non-mainstream religions. Curiously, Justice Ginsburg in Cutter v. Wilkinson went at great length through the legislative history of the Religious Land Use and Institutional Persons Act and found that the Congress had assembled quite a bit of information leading it to conclude that this same pervasive hostility to non-mainstream religions existed throughout the United States and led Congress to specifically overrule the U.S. Supreme Court. Now, if we assume that it is the pervasive and continuous hostility or indifference or failure to help out non-mainstream religions that led to the preliminary injunction and triggered the consent decree, why shouldn't we find that part of the state's burden of going forward with the evidence to establish a prima facie case required to address the general conditions facing non-mainstream religions and at least indicate in some way that that pervasive hostility no longer existed and that groups that some of us may consider totally nonsense are entitled to and therefore receive the same consideration that the mainstream religions do? Why shouldn't the prima facie case have that record before us? Judge Singleton, if I could, I'd like to answer that question in two parts. In the first part, relating to the facts of this case, because that's not what the consent decree that the parties entered into provided for. What the consent decree in this case provided for under the settlement agreement is that the parties, there was no admission of fault, there was no admission of liability. They agreed that the consent decree would be construed by its four corners and its four corners alone, that no extrinsic evidence could be taken on the terms and understanding of the consent decree. So when the consent decree provided for no liability and provided that defendants could move to vacate and would be permitted to vacate the consent decree after one year had elapsed and a showing of substantial compliance with the terms of the consent decree, that's solely the question that was before the court. And at the risk of maybe overstepping myself on a second issue to the larger question of why the prison system had to make a showing of pervasive hostility or remedying an alleged pervasive hostility, I would allege in this case the facts, again, before the court showed that the defendants were not only complying with the consent decree, but they were taking steps to facilitate Mr. Rausser's Wiccan fate. For example, there's nothing in the consent decree that required the prison to consult with Mr. Rausser or allow him to assist in the construction of the Wiccan outdoor area. However, the testimony and even Mr. Rausser's own motions showed that he was being allowed to consult on the design of that Wiccan outdoor religious area and that he was being allowed to work on it as well as it was being constructed. It also showed that a volunteer Wiccan minister, in fact one of the witnesses who appeared before Judge Carlton, was providing Wiccan services into the prison, not just for Mr. Rausser but for other Wiccan inmates as well. The policies and procedures that were attached to Mr. Wilcox's declaration also explained how a Wiccan inmate could be designated if the volunteer minister is not available, that a Wiccan inmate could be designated. I just want to be clear, it's not saying that Mr. Rausser necessarily would be that, but he could apply to be that inmate, or would be designated to facilitate the group services of the Wiccan faith. Is there anything about study groups in Mr. Wilcox's showing? Or fire pit access? There is about fire pit access, but not about study groups. There is about fire pit access? Do you remember where it is? The outdoor religious area includes the fire pit, Your Honor. Does it say fire pit? It does not say fire pit. I mean you could have an outdoor, I mean we have an outdoor area here too, but no fire pit. It does not say fire pit in Mr. Wilcox's declaration, however in the settlement agreement it describes the outdoor religious areas, including the fire pit. Is there anything about anointing oils? In Mr. Wilcox's declaration, I don't believe it was specifically listed, Your Honor. Wood wand? Hm? A wood wand service? It was not specifically listed, Your Honor. So you think that's all under that all-encompassing paragraph where he says all those items are provided, Your Honor, if I could turn back to the declaration, there was a second paragraph that identified, again, the settlement agreement, there was the paragraphs for personal religious items, and then a second paragraph that addressed group religious items. And where is that? Which one is that? Are you asking about the settlement agreement, Your Honor, or Mr. Wilcox's declaration? I'm asking about the declaration. Okay. One minute, Your Honor. This is paragraph 7 on ER 63, Your Honor. Okay. Thank you. Thank you. Your Honors, I recognize I'm well over my time. If there's no further questions. Thank you. I just have the one question. Is he a lifer? You know, Your Honor, I believe so, but I do not know for sure. Okay. But he's not here today? No, he is not, Your Honor. He still is housed at Lancaster State. So the case is not moot? No, it is not moot, Your Honor. Okay. Thank you. We'll hear from opposing counsel. We'll give you two minutes. Thank you. Actually, I would just like to direct the court to one document, which is at ER 160 to 162. This is a sworn filing from Mr. Rouser on October 9, 2012. And in there, I think he makes, he says all of the things that we were, to the extent he didn't say it at ER 52, he said it here. And so, Judge Kaczynski, in response to your question from the last time I was here, this is where he alleges he didn't have his Bible while he was in administrative segregation. And that's on the carryover paragraph from 160 to 161. Probably most clearly stated at the bottom line of 160, where it goes, and refused to give to him, along with his witch's Bible, that they have refused to give him. And that second bit was on there. So when was he in abseg? Well, it's not, I'm really not clear on this. I think he was in and out of abseg throughout this entire period, Judge Callahan. And in this declaration, he talks about going into abseg and being there without his Bible. And he actually talks about how someone named Shabazz. But it wasn't, it said that he was going to go into abseg, right? No, Your Honor. I believe here he's saying that he was in abseg and did not have his Bible. And he actually refers to a person named Shabazz, and that's at line 12, who actually, as I understand, is a prison official. He's actually a guard, a sergeant, I think. And then in response to whether he alleges intentional interference with the decree, which came up a little bit, that's on 162, lines 3 through 5, he calls the defendants part of a, quote, criminal conspiracy under the authority, under the color of authority to retaliate and punish plaintiff for exercising his constitutional right to access the court and to get witnesses. Is that on the motion to vacate? Well, it's no, Judge Callahan. It's during the litigation over his motion that notified the court that they were violating the decree. The problem is he didn't know whether the court had disposed of that or not, and so he didn't know whether he needed to, he had no way of knowing that he needed to remake these allegations in the subsequent litigation on dissolving the decree. So what do you point to? Which order that he did not get that was returned to the court prejudiced him? I think there's two, Judge Kaczynski. So he didn't, he files a notice of violation of consent decree. There's some briefing. The district court denies a lot of it and grants a little of it. He doesn't get that order. So he has no idea what the court has found credible or not and what the court did or did not acknowledge in disposing of that filing. The second order that I think hurt even more is the district court says, I'm not going to look at a lot of this stuff because you're not filing it in compliance with the rules and you're not saying in it that you went to the warden first and then the director before you came to me. And since he didn't get that order, he had no idea that he needed to refile this evidence in a proper format in which the court was willing to look at it. And if there are no other questions, Your Honors, I'll sit down. Thank you. Okay, thank you. Case is all yours.
judges: Singleton, Kozinski, Callahan